```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------X
                                    :
NAIROBI HOLDINGS LIMITED,           :
                                    :   02 Civ. 01230 (LMM)(THK)
          Plaintiff,                :
                                    :   **MEMORANDUM OPINION AND ORDER**
     -against-                      :
                                    :
BROWN BROTHERS HARRIMAN & CO.,      :
et al.                              :
                                    :
          Defendants.               :
                                    :
------------------------------------X
```
**THEODORE H. KATZ, UNITED STATES MAGISTRATE JUDGE.**

This action was referred to this Court for general pretrial supervision, pursuant to 28 U.S.C. § 636(b)(1)(A). Plaintiff Nairobi Holdings Limited ("NHL") seeks leave to submit a Third Amended Complaint. For the reasons stated below, the application is denied.

### PROCEDURAL HISTORY

This litigation has been ongoing for over four years. A more complete background and procedural history can be found in prior Opinions issued in this case. See Nairobi Holdings Ltd. v. Brown Bros. Harriman & Co., No. 02 Civ. 1230 (LMM), 2002 WL 31027550 (S.D.N.Y. Sept. 10, 2002) ("NHL I"); Nairobi Holdings Ltd. v. Brown Bros. Harriman & Co., No. 02 Civ. 1230 (LMM), 2003 WL 21088506 (S.D.N.Y. May 14, 2003) ("NHL II"); Nairobi Holdings Ltd. v. Brown Bros. Harriman & Co., No. 02 Civ. 1230 (LMM), 2004 WL 1124660 (S.D.N.Y. May 20, 2004) ("NHL III"). The following provides a

1

summary relevant to the instant motion for leave to amend.

NHL initiated this action on February 14, 2002 against Brown Brothers Harriman & Co. ("BBH") and Lawrence Tucker (collectively, "Defendants") claiming federal securities fraud under Section 10(b) of the Securities Act of 1934, violations of the Investment Advisors Act of 1940, and various state tort claims. See NHL I at *1. The Complaint alleged that Defendants made fraudulent misrepresentations that induced NHL to invest in World Access, Inc. ("WAXS"), a now-bankrupt telecommunications company. See id. Specifically, NHL pled that Defendants misrepresented the performance of WAXS's management, the amount of WAXS's cash reserves and cash equivalents, and WAXS's position in the European telecommunications sector. (See Memorandum of Law in Support of Motion for Leave to Submit a Third Amended Complaint, dated Jan. 17, 2006 ("Pl.'s Mem."), at 1.) NHL also claimed that Defendants fraudulently induced NHL to maintain its position in WAXS by covering up the rapidly deteriorating condition of WAXS during 2000 and early 2001. See NHL I at *1.

On April 18, 2002, Brown Brothers moved to dismiss the Complaint. The Court (McKenna, J.) granted Defendants motion in part, dismissing, inter alia, NHL's Section 10(b) fraud claims based on its pre-September 2000 stock purchases. See id. at *4. NHL was given leave to replead. See id. at *10.

Plaintiff filed an Amended Complaint on October 24, 2002. The

Amended Complaint omitted certain state law claims that were dismissed in NHL I, and removed any claims relating to NHL's retention of WAXS securities. See NHL II at *1. The Amended Complaint instead repled claims based on NHL's purchase of WAXS stock in February 2000 and continued to assert claims for the period between September and December 2000. See id. The Amended Complaint also revised a previously dismissed claim for securities fraud arising out of an alleged September 2000 misrepresentation by Defendants advising investment in WAXS. See id. Finally, the Amended Complaint added a new claim for securities fraud resulting from Defendants' misrepresentations and omissions made in January 2000, which allegedly induced Plaintiff's February 2000 investment. See id.

On November 25, 2002, Defendants moved to dismiss the Amended Complaint. The Court, in a May 2003 decision, dismissed NHL's federal statutory claims relating to the February 2000 investment in WAXS as time-barred, but denied Defendants' motion as to NHL's statutory claims based on its post-September 2000 investment. See id. at *5, *8. Further, the Court held that NHL had not properly pled scienter for purposes of its common-law fraud claim based on the February 2000 investment. See id. at *8. NHL was given leave to replead its common-law fraud claims relating to its February 2000 investment. See id. However, the Court cautioned that "this will be plaintiff's last chance to replead," and noted that "'three

3

bites at the apple is enough.'" See id. (citation omitted).

NHL filed its Second Amended Complaint on June 12, 2003. In the Second Amended Complaint, NHL did not replead the statutory claims, relating to the February 2000 investment, that were dismissed on statute of limitations grounds in NHL II. See NHL III at *2. NHL did, however, replead its common law fraud claim by adding four additional paragraphs alleging motive and opportunity. See id. NHL also, for the first time, pled a common law claim for fraudulent retention, alleging that "in reliance upon the misrepresentations made by defendants, plaintiff purchased shares of WAXS stock on September 15, 2000 . . . and retained shares acquired prior to September 15, 2000." See id. at *5.

Defendants moved for a third time to dismiss NHL's claims. In May 2004, the Court granted Defendants' motion to dismiss NHL's common law fraud claim relating to the February 2000 investment. See id. at *6. The Court denied Defendants' motion to dismiss NHL's statutory and common law claims relating to its post-September 2000 investments, including NHL's new allegation of fraudulent retention. See id.

Defendants filed their Answer to the Second Amended Complaint on July 9, 2004. Judge McKenna issued a Scheduling Order in this action on August 4, 2004. The Court set a discovery deadline of January 31, 2006. The parties commenced discovery in October 2004. See Nairobi Holdings Ltd. v. Brown Bros. Harriman & Co., No. 02

4

Civ. 1230 (LMM), 2005 WL 742617, at *2 (Mar. 18, 2005). An Amended Scheduling Order was subsequently issued by this Court, and the deadline for the completion of fact discovery is now March 31, 2006. (See Memorandum Endorsed Order, Oct. 15, 2006.)

On January 17, 2006, NHL filed the instant motion for leave to submit its Third Amended Complaint. NHL's Proposed Third Amended Complaint substantially revises the allegations against Defendants, adding over thirty new paragraphs directed at Defendants' alleged knowledge and concealment of WAXS's alleged accounting fraud relating to 1) WorldCom's failure to make payments to WAXS under a June 1998 "Take-or-Pay" agreement, and 2) WAXS's subsequent merger with WorldxChange Communications for the alleged purpose of concealing WAXS's prior financial misstatements. (See Proposed Third Amended Complaint ("Proposed Third Am. Compl."), attached as Ex. D to Affirmation of Timothy J. McCarthy in Support of Plaintiff's Motion For Leave to Submit a Third Amended Complaint ("McCarthy Aff."), ¶¶ 16-34, 41, 44-46, 49-50.) With the addition of these new allegations of fraud and concealment, NHL appears to be attempting to put a new spin on its claims so as to reassert a viable cause of action with respect to NHL's February 2000 investment in WAXS.[1] The claims relating to the February 2000

---

[1] For instance, NHL has omitted from the Proposed Third Amended Complaint's first cause of action for violation of Section 10(b), any reference to a time period during which Defendants made the alleged misrepresentations. The Second Amended Complaint made reference to September 2000, presumably to

5

investment were dismissed previously. In fact, NHL's Section 10(b) claim has been dismissed twice - first in NHL I, and then, after NHL was given a chance to replead, in NHL II. NHL's pre-September 2000 investment claims were dismissed both on statute of limitations grounds and for a failure to adequately plead scienter.

Defendants oppose NHL's application to file a fourth complaint, emphasizing that the application is being made four years after the filing of the initial complaint, two years after the prior amended complaints, and after eighteen months of discovery. (See Defendants' Memorandum of Law in Opposition to Plaintiff's Motion for Leave to File a Third Amended Complaint, dated Jan. 30, 2006 ("Defs.' Mem."), at 1.) Defendants argue that NHL is precluded under the law of the case doctrine from filing another amended complaint based on Judge McKenna's admonition in NHL II that the Second Amended Complaint would be NHL's last chance to replead. (See id. at 11-12.) Defendants further argue that NHL must show "good cause" under Rule 16(b) of the Federal Rules of Civil Procedure ("Rule 16(b)") for its untimely request for leave

---

reflect that NHL's statutory claim related to its February 2000 investment had been dismissed. (See Proposed Third Am. Compl. ¶ 96.) In the same respect, the third cause of action for common-law fraud in the Proposed Third Amended Complaint replaces the date of September 15, 2000, which was in the Second Amended Complaint, with the date of February 11, 2000, now alleging that, "In reliance upon the misrepresentations made by defendants, plaintiff purchased shares of WAXS stock on February 11, 2000 and thereafter, and retained shares acquired on February 11, 2000 and thereafter." (See id. ¶ 106.)

to amend, because the Court has already issued a Scheduling Order in the action and the parties are near the completion of discovery. (See id. at 12-13.)  Defendants maintain that NHL cannot prove "good cause" under Rule 16(b) because of NHL's unexplained delay in asserting its new allegations, which it allegedly lifted whole-cloth from a complaint filed against WorldCom, WAXS, and Defendant Tucker in the Superior Court of California, almost five years ago, and which are based on materials NHL had access to prior to its filing of the Amended Complaint and Second Amended Complaint. (See id. at 13-15.)  Finally, Defendants contend that the Proposed Third Amended Complaint would require very substantial additional pretrial discovery.

**DISCUSSION**

I. <u>Law of the Case Doctrine</u>

"Under the 'law of the case' doctrine, 'courts are understandably reluctant to reopen a ruling once made,' especially 'when one judge or court is asked to consider the ruling of a different judge or court.'" <u>Lillbask ex rel. Mauclaire v. State of Conn. Dept. of Educ.</u>, 397 F.3d 77, 94 (2d Cir. 2005).  When a court has ruled on an issue, that decision should generally be adhered to in subsequent stages of the same action, unless cogent or compelling reasons militate otherwise. See <u>United States v. Crowley</u>, 318 F.3d 401, 420 (2d Cir. 2003) (citing <u>United States v. Uccio</u>, 940 F.2d 753, 758 (2d Cir. 1991)); <u>United States v.</u>

7

Quintieri, 306 F.3d 1217, 1225 (2d Cir. 2002) (citations omitted). The law of the case is a discretionary doctrine, which does not preclude a court from reconsidering its prior opinion in light of an intervening change in controlling law, the availability of new evidence, or the need to correct clear error or prevent manifest injustice. See Scottish Air Inter. v. British Caledonian Group, PLC, 152 F.R.D. 18, 24-25 (S.D.N.Y. 1993) (citation omitted).

In NHL II, the Court gave NHL leave to replead its claims relating to its February 2000 investment, but cautioned, "[h]owever, this will be plaintiff's last chance to replead." See NHL II at *8. The Court went on to explain that giving NHL "three bites at the apple" in amending its pleadings was enough. See id. (citation omitted). NHL then proceeded to utilize its last opportunity to replead and filed the Second Amended Complaint.

NHL II's directive that there were to be no further amendments after the filing of the Second Amended Complaint is clearly the law of the case. See Scottish Air Inter., 152 F.R.D. at 26 (holding that the court's decision in a previous stage of the litigation to deny the plaintiff's motion to file an amended complaint was law of the case). Thus, this Court will only reconsider NHL II's ruling if NHL can show compelling circumstances, such as a change in controlling law, the availability of new evidence, or the need to correct clear error or manifest injustice. See id.

NHL does not claim that there has been a change in the

8

controlling law or that Judge McKenna's decision was clear error. Rather, NHL, in the context of arguing for leave to amend under Rule 15(a), contends that its application is motivated by new evidence, uncovered during discovery, indicating Defendants' knowledge and complicity in a massive accounting fraud involving a "sham" contract between WorldCom and WAXS. (See Pl.'s Mem. at 4.) NHL admits that it "first became aware of the possibility of these new factual grounds in large part due to the previous litigation of similar claims" in a 2001 case in the Superior Court of California. (See id.) However, NHL claims it was not until discovery in the present action that NHL obtained an adequate basis for pleading Defendants' scienter in connection with the alleged fraudulent agreement and subsequent coverup. (See id.)

NHL points to an internal memorandum, uncovered during discovery, which it frames as "revealing that defendant Tucker discussed WAXS' and WorldCom's non-performance of the sham contract at issue." (See id. at 4-5.) This BBH "memo to file" regarding WAXS, dated September 29, 1998, discusses Tucker's thoughts on what BBH's priorities should be with respect to WAXS, and only mentions Tucker's concern that "[WAXS's CEO] has gilded the lily considerably in his description of how the relationship [between WAXS and WorldCom] might evolve." (See Memorandum to 1818 III Files, dated Sept. 29, 1998 ("Tucker Mem."), attached as Ex. B to McCarthy Aff., at 3.) In the memorandum, Tucker also states that

9

"Tod told me that WorldCom hasn't hit the agreed $25mm/mo revenue level yet (I think he said that it looks as if . . . total revenue for September will be about $5mm short of the $25mm/mo level[)] . . ."

From the Court's perspective, the tentative nature of Tucker's discussion of WAXS in this Memorandum does not indicate Tucker's knowledge or complicity in any fraud. Rather, it appears that NHL's proposed amendments rely on the other material it points to - material that is unrelated to discovery in the current action - namely, deposition testimony of WAXS's CEO, which NHL claims to have uncovered upon further research, and the Superior Court of California complaint from 2001. That is, NHL relies on deposition testimony of John D. Phillips, WAXS's CEO, given in July 2002 in <u>Sciens Guernsey Capital Partners v. Abbott</u>, No. 01 Civ 7298 (S.D.N.Y.). (<u>See</u> Transcript of Videotape Deposition of John D. Phillips, dated July 25, 2002, attached as Ex. C to McCarthy Aff.)[2] According to NHL, during the deposition, Phillips admitted that the contract between WAXS and WorldCom was not being performed and was being used by WAXS to meet Wall Street's revenue expectations. (<u>See</u> Pl.'s Mem. at 5.)

Defendants argue that NHL's "new evidence," the Tucker

---

[2] This action was filed on August 7, 2001. Neither NHL nor Defendants describe what was at issue in <u>Sciens Guernsey Capital Partners</u>. The action does not appear to have been brought against BBH or Tucker.

10

Memorandum, reveals no information unknown to NHL before it filed the original Complaint. (Defs.' Mem. at 11-12.)  The Court does not agree with the breadth of Defendants' conclusion.  However, upon review of the Tucker Memorandum - the only "new evidence" produced as part of discovery in this action that NHL is relying on for its proposed amendments - the Court agrees with Defendants that Tucker's comments, on the relationship between WAXS and WorldCom, do not suggest that Tucker had knowledge of any fraud.  Rather, allegations of scienter appear to depend on Phillips's deposition testimony.  In the Proposed Third Amended Complaint, NHL alleges,

> Phillips subsequently admitted in testimony in a separate action that he and the Board of Directors of WAXS had discussed, not only the fact that the contract was not being performed according to the terms that were being touted to investors, but also the fact that WAXS was receiving from WorldCom payments for traffic that WAXS did not actually provide to WorldCom, and that WAXS in fact used the sham payments to meet Wall Street revenue expectations.

(See Proposed Third Am. Compl. ¶ 34).  It is Phillips's testimony about a WAXS Board of Directors meeting, where WorldCom's performance under the carrier services agreement was discussed, together with Tucker's status as a WAXS board member, that provides the link between the alleged fraud and scienter on the part of Defendants.  This deposition testimony was given in July 2002 - three months before NHL filed its Amended Complaint and three and a half years before its current application for leave to amend.

Further, a substantial portion of NHL's new allegations in the

11

Proposed Third Amended Complaint mirror those from the complaint filed on May 29, 2001, in California Superior Court, in Abbott v. Phillips. (See Complaint, Abbott v. Phillips, Case No. 321708, dated May 29, 2001 ("Abbott Complaint"), attached as Ex. A to McCarthy Aff.)  The Abbott Complaint included allegations about WAXS and Tucker's involvement in and subsequent coverup of the alleged sham "Take-or-Pay" contract with WorldCom. (See id.) Moreover, the Abbott Complaint received attention in the media, including a March 27, 2002 article in the New York Times detailing the allegations made in Abbott relevant to NHL's proposed amendments,

> A crucial element in the transactions, according to the [Abbott] suit, was the business relationship [WAXS's CEO] negotiated with WorldCom.  The suit says that [WAXS's CEO] portrayed the arrangement as a commitment from WorldCom to buy $25 million a month in services from World Access.  In fact, the suit contends, the contract was 'a sham' and WorldCom paid only the amount needed to help World Access meet its quarterly earnings projections.

(Barnaby J. Feder, A Suit Says WorldCom Deals Obscured Millions in Bad Debt, N.Y. Times, Mar. 27, 2002, at C3, attached as Ex. C to Declaration of Kelly K. Pilla ("Pilla Dec.").)

Finally, Defendants point out that an April 1999 memorandum from BBH to NHL, who was a limited partner in the 1818 Fund III administered by BBH, detailed the history of the WAXS-WorldCom relationship. (See Defs.' Mem. at 10; Memorandum from BBH to Limited Partners of the 1818 Fund III, dated April 5, 1999 ("Apr.

12

1999 Mem."), attached as Ex. H to Pilla Dec.) The April 1999 Memorandum is bates stamped as produced from NHL's own files. It describes the carrier services agreement, which NHL refers to as the "Take-or-Pay" contract or "sham" contract, in detail. (See id. at 4.) The Memorandum also includes a comprehensive section on investment risks, detailing WAXS's untested business model and dependence on WorldCom. (See id. at 9-12.)

From the above, the Court concludes that NHL had access to the materials containing the information essential to its proposed amendments, particularly Phillips's deposition testimony, prior to the filing of NHL's Amended Complaint, let alone the Proposed Third Amended Complaint. NHL need not have waited to plead scienter until it discovered the Tucker Memorandum, as indeed, the Memorandum does not demonstrate that Tucker had the knowledge alleged. Therefore, NHL has not demonstrated a compelling reason for this Court to depart from the law of the case precluding NHL from further amending the governing complaint.

Nonetheless, out of an abundance of caution, the Court further notes that in addition to finding no compelling reason to depart from the law of the case here, NHL has also failed to show good cause under Rule 16(b) for its untimely application for leave to amend.

II. NHL's Application for Leave to Amend

Motions to amend are governed by one of two standards, Rule

13

15(a) or Rule 16(b). See In re Wireless Tel. Servs. Antitrust Lit., No. 02 Civ. 2637, 2004 WL 2244502, at *4 (S.D.N.Y. Oct. 6, 2004). Normally, leave to amend pleadings is evaluated under Rule 15, which provides that leave to amend "shall be freely given when justice so requires." Fed. R. Civ. P. 15(a). However, once a scheduling order has been entered in an action, which sets a deadline for amending a complaint, Rule 16(b) governs motions for leave to amend. See Parker v. Columbia Pictures Indus., 204 F.3d 236, 339 (2d Cir. 2000); In re Wireless, 2004 WL 2244502, at *5.

Here, the Court clearly set a deadline for NHL's amending its pleadings when it stated in NHL II that the Second Amended Complaint would be NHL's last chance to replead. See NHL II at *11-12. The Court also subsequently entered a Scheduling Order seventeen months prior to NHL's present application. The Scheduling Order has been extended several times, and the parties have been engaging in discovery. Thus, Rule 16(b) governs the instant motion for leave to amend. See Wireless Tel. Servs., 2004 WL 2244502, at *5 (holding that Rule 16(b) governed motion for leave to amend where two scheduling orders has been issued and several scheduling conferences had been held).

Rule 16(b) provides that a district court shall enter a scheduling order in an action that limits the time to, inter alia, join other parties or amend the pleadings. See Rule 16(b)(1). Rule 16(b)(1)'s deadline for amendments offers "a measure of certainty

14

to pretrial proceedings, ensuring that 'at some point, both the parties and the pleadings will be fixed.'" See Parker, 204 F.3d at 339-340 (quoting Rule 16(b) Advisory Committee Notes). Under Rule 16(b), a scheduling order "shall not be modified except upon a showing of good cause . . . ." The Second Circuit has noted that "'if we considered only Rule 15(a) without regard to Rule 16(b), we would render scheduling orders meaningless and effectively would read Rule 16(b) and its good cause requirement out of the Federal Rule of Civil Procedure.'" See Parker, 204 F.3d at 340 (quoting Sosa v. Airprint Sys., Inc., 133 F.3d 1417, 1419 (11th Cir. 1998) (per curiam); accord Apollo Theater Found., Inc. v. W. Inter. Syndication, No. 02 Civ. 10037, 2005 WL 1041141, at *19 (S.D.N.Y. May 5, 2005) (citation omitted).

It follows that a court retains the discretion to deny a party's motion to amend its pleadings if, absent a showing of good cause, the motion is made after the time provided for in the scheduling order. See NAS Elecs., Inc. v. Transtech Elecs. Pte Ltd., 262 F. Supp. 2d 134, 150 (S.D.N.Y. 2003). Good cause in this context has been interpreted to mean that scheduling deadlines could not be met despite a moving party's diligence. See Grochowski v. Phoenix Constr., 318 F.3d 80, 86 (2d Cir. 2003) (determining that a finding of good cause under Rule 16(b) turns on the diligence of the party seeking to amend); Parker, 204 F.3d at 340 (same); NAS Electronics, 262 F. Supp. 2d at 150 (same) (citation

15

omitted). Moreover, while the absence of prejudice to a nonmoving party may be relevant to leave to amend under Rule 15(a), it does not fulfill the good cause requirement of Rule 16(b). See Carnrite v. Granada Hosp. Group, Inc., 175 F.R.D. 439, 446 (W.D.N.Y. 1997) (citation omitted).

NHL has failed to show good cause for its delay in proposing to the Court new amendments, which would transform this action from one asserting claims based on Defendants' misrepresentations as part of its financial advise to NHL, to one focusing on Defendants' knowledge of WAXS's involvement in an accounting fraud involving WorldCom. As discussed, the Proposed Third Amended Complaint has been put forward almost five years after the filing of the Abbott action, which contained identical allegations. NHL admits that it was aware of the Abbott litigation prior to filing its Second Amended Complaint. (See Reply Memorandum of Law in Further Support of Motion for Leave to Submit a Third Amended Complaint, dated Feb. 6, 2006, at 5.) The proposed amendments are offered three and a half years after WAXS's CEO's deposition testimony, relied on by NHL in framing its proposed amendments. Further, Defendants point out that the Tucker Memorandum was produced to NHL as part of a document production in June 2005, seven months prior to the instant motion to amend. (Defs.' Mem. at 18 n.4.) NHL's conduct can hardly be viewed as diligent.

The Court is not convinced by NHL's purported reason for the

delay in amending the complaint. NHL claims that it has not made allegations of fraud, in any of its three previous complaints, targeting the relationship between WAXS and WorldCom, out of caution for having an adequate basis to plead scienter. (See Pl.'s Mem. at 2.) However, Tucker was sued as a director in <u>Abbott</u> five years ago, based on claims that he possessed the same knowledge as NHL now alleges. (See <u>Abbott</u> Complaint.) The Court concludes that if NHL had acted with diligence, the <u>Abbott</u> Complaint, Phillips's deposition testimony, and its own files on WAXS, would have given NHL an understanding of Defendants' purported fraud sufficient to have pled its new allegations, including scienter, in the Amended Complaint or Second Amended Complaint. <u>Cf.</u> <u>Parker</u>, 204 F.3d at 341 (upholding denial of leave to amend under Rule 16(b) where the plaintiff had all the necessary information to support his proposed claim prior to discovery, and nothing the plaintiff learned during discovery or otherwise altered that fact); <u>Apollo Theater Found.</u>, 2005 WL 1041141, at *19 (finding good cause arguments transparent where the plaintiff claimed that proposed amendments were based on deposition testimony elicited during discovery, but court concluded that the plaintiff could have raised claims earlier based on information within the plaintiff's control). Moreover, as Defendants observe, "this plaintiff was undaunted by similar 'lack of knowledge' in thrice filing complaints that failed to state facts sufficient to meet basic pleading requirements," including

sufficiently pleading scienter. (See Defs.' Mem. at 13-14.)

Finally, although not necessary in order to reach the conclusion that NHL has not shown good cause for its delay, the Court cannot ignore that less than one month remains to complete pretrial fact discovery in this action.[3] Defendants argue that the proposed amendments would, by necessity, open the door to an extensive new round of discovery from third parties. (See Defs.' Mem. at 21.) NHL disagrees, but the Court does not see how the parties could move forward under the Proposed Third Amended Complaint without engaging in discovery relating to the details of the relationship between WorldCom and WAXS. Moreover, any such discovery might have to await resolution of yet another motion to dismiss. The time and expense of another motion to dismiss, re-deposing individuals already deposed, making another round of document requests, and taking third party depositions, at a point in time when fact discovery is a month from completion, counsels against allowing a further amendment of the governing complaint.

For these reasons, the Court concludes that NHL has not shown good cause for the untimely filing of its Proposed Third Amended Complaint. Cf. Grochowski, 318 F.3d at 86 (upholding denial of motion to amend where plaintiffs delayed more than one year before

---

[3] Because NHL's application for leave to amend is precluded by the law of the case and NHL has not shown good cause under Rule 16(b) to make an untimely amendment, it is not necessary for the Court to reach whether NHL's application would be precluded under Rule 15(a) because of bad faith or futility.

18

seeking to amend complaint, and filed amendment after discovery had been completed); Parker, 204 F.3d at 339 (holding that district court did not abuse its discretion in denying Plaintiff's motion to amend on the ground that the motion was brought after the court-ordered deadline for amending the pleadings); Carnrite, 175 F.R.D. at 448 (denying motion to amend under Rule 16(b) where the plaintiff's arguments centered on lack of prejudice to defendants and lack of delay in the proceedings).

## CONCLUSION

NHL's application for leave to file its Third Amended Complaint is denied.

SO ORDERED.

_____
THEODORE H. KATZ
UNITED STATES MAGISTRATE JUDGE

Dated: March 10, 2006
New York, New York

Copies sent to:

Timothy J. McCarthy, Esq.
Sheppard Mullin Richter & Hampton, LLP
30 Rockefeller Plaza, Suite 4250
New York, New York 10112

Daniel Beller, Esq.
Paul, Weiss, Rifkind, Wharton & Garrison LLO
1285 Avenue of the Americas
New York, New York 10019